FILED
APR 16 2026
Honorable Manish S. Shah
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ZEHAUN WEI | No. 24 CR 595-2<br><br>Judge Manish S. Shah |

# PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant ZEHAUN WEI, and his attorney, ALEX KESSEL, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charge in This Case

2. The superseding information in this case charges defendant with accessory after the fact to kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1); all in violation of Title 18, United States Code, Section 3.

3. Defendant has read the charge against him contained in the superseding information, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the superseding information, which charges defendant with accessory after the fact to kidnapping, in violation of Title 18, Untied States Code, Section 1201(a)(1); all in violation of Title 18, United States Code, Section 3.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning on or about November 4, 2024, and continuing until on or about January 17, 2025, in the Northern District of Illinois, Southern District of California and elsewhere, defendant WEI, knowing that an offense against the United States had been committed, namely, kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1), knowingly received, relieved, comforted, and assisted the offenders in order to hinder and prevent the offenders' apprehension, trial, and punishment; all in violation of Title 18, United States Code, Section 3.

More specifically, beginning on or about October 25, 2024, WEI drove codefendants Fan Zhang, Shengnan Jiang, and Ye Cao from the Los Angeles area to Chicago, arriving in Chicago on the evening of October 26, 2024. Once in Chicago, WEI, Zhang, Jiang, and Cao met up with codefendants Huajing Yan and Shiqiang Lian. WEI acknowledges that on or about October 27, 2024, while in

Chicago, Zhang, Jiang, Yan, Lian, and Cao kidnapped Victim A, Victim B, Victim C, and Victim D ("the Victims") for ransom and held the Victims until November 1, 2024, when they were released after ransom was paid.

During the kidnapping, WEI went to a home in Forest Park where Zhang, Jiang, Yan, Lian, and Cao were holding the Victims, brought supplies, and knew that the others were holding the Victims there. WEI also rented a white Chrysler Pacifica minivan for use by Zhang, Jiang, Yan, Lian, and Cao, and provided them with that minivan. WEI acknowledges that the minivan was used to transport the kidnapping victims and obtain supplies for the kidnapping. WEI remained in the Chicago area until the evening of October 29, 2024, at which point he left to drive back to Los Angeles. On November 1, 2024, WEI flew back to Chicago. After arriving in Chicago in the afternoon, WEI met up with Zhang, and subsequently Jiang, Cao, Yan, and Lian joined them. At the time, WEI knew that Zhang, Jiang, Yan, Lian, and Cao had engaged in the kidnapping of the Victims for ransom and had received millions of dollars in cryptocurrency from the Victims.

Later on the night of November 1, 2024, WEI and Zhang flew from Chicago O'Hare Airport to Las Vegas, arriving early the morning of November 2. Later on November 2, WEI and Zhang flew from Las Vegas to Los Angeles. Thereafter, on or about November 4, 2024, knowing that Zhang had engaged in kidnapping, WEI drove Zhang from the Los Angeles area to Tijuana, Mexico, crossing the U.S.-Mexico border, so Zhang could flee the United States and fly from Tijuana to

Beijing, China, in order to avoid apprehension, trial and punishment for the kidnapping.

In addition, on or about January 17, 2025, after learning that Cao had been arrested in connection with the kidnapping of the Victims, and knowing that Jiang, Yan, and Lian had engaged in kidnapping, WEI also drove Jiang, Yan, and Lian from the Los Angeles area to Tijuana, and across the U.S.-Mexico border, so Jiang, Yan, and Lian could flee the United States and fly from Tijuana to Beijing, in order to avoid apprehension, trial and punishment for the kidnapping.

WEI acknowledges Zhang, Yan, Jiang, Lian, and Cao did unlawfully seize, confine, kidnap, abduct, carry away, and hold for ransom and reward and otherwise, Victims A, B, C, and D, and used a means, facility, and instrumentality of interstate commerce, namely, automobiles, in committing and in furtherance of the offense, in violation of Title 18, United States Code, Section 1201(a)(1). WEI further acknowledges that a ransom demand was made, that the kidnapping involved threatening Victim A with a fake gun, and that Victim C was an infant at the time of the kidnapping.

**<u>Maximum Statutory Penalties</u>**

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 15 years' imprisonment. The offense also carries a maximum fine of $250,000 or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands

that the judge also may impose a term of supervised release of not more than three years.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the count to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 1, 2025 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 30, pursuant to Guideline § 2X3.1, as follows:

1. The base offense level for the underlying offense, kidnapping, is 32, pursuant to Guideline § 2A4.1(a).

2. The offense level is increased by 6 levels, pursuant to Guideline § 2A4.1(b)(1), because a ransom demand was made.

3. The offense level is increased by 2 levels, pursuant to Guidelines § 2A4.1(b)(3), because a dangerous weapon was used. Defendant disagrees that this adjustment applies.

4. The offense level is increased by 2 levels, pursuant to Guideline § 3A1.1(b)(1), because a victim of the offense was a vulnerable victim. Defendant disagrees that this adjustment applies.

5. The total offense level for the underlying offense, kidnapping, is 42.

6. Under Guideline § 2X3.1, the base offense level for accessory after the fact is 6 levels lower than the offense level for the underlying offense, except that it shall be no more than level 30. The offense level here is therefore 30.

ii. The government understands that defendant will truthfully admit the conduct comprising the offense of conviction, and truthfully admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iii. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b),

if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

iv. **Zero-Point Offender Adjustment**. Pursuant to Guideline § 4C1.1, in the event that the Court determines that defendant is eligible, the offense level is decreased by two levels. It is defendant's position that he is eligible for this adjustment. The government opposes the application of this adjustment.

v. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

c. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government anticipates the offense level to be 27, which when combined with the anticipated criminal history category of I results in an anticipated advisory sentencing guidelines range of 70 to 87 months' imprisonment, in addition to any supervised release and fine and restitution the Court may impose. It is defendant's position that the anticipated offense level is 25, which when combined with the anticipated criminal history category of I results in an anticipated advisory sentencing guidelines range of 57 to 71 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

d. Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. If the Court finds that mandatory restitution, pursuant to Title 18, United States Code, Section 3663A, is inapplicable, defendant agrees to pay restitution, jointly and severally with co-defendants, equal to the loss amount to the victims resulting from the kidnapping and ransom payment described above, which amount is to be determined by the Court at sentencing, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify

the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event of the death or dissolution of, or the government's inability to locate the named recipient(s) of restitution in the Judgment and Commitment Order, the defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

16. Defendant acknowledges that on or about April 1, 2026 the United States commenced a civil forfeiture action, case no. 26 CV 3630, in the Northern District of Illinois, alleging that the following property is subject to forfeiture: Seized cryptocurrency consisting of approximately 763,699.0201 Tether ("USDT") tokens ("Subject Asset #1"), approximately 1,222,451.617246 USDT tokens ("Subject Asset #2"), and approximately 202,039.787104 USDT tokens ("Subject Asset #3") (collectively, the "Subject Assets"). Defendant acknowledges that he had notice of the proceeding and admits that the property is subject to forfeiture as

alleged. Further, by signing this agreement, defendant relinquishes any right, title, and interest he may have had in this property, withdraws any previously filed claims and answers, and understands that an order of forfeiture has been entered, or will be entered, thereby extinguishing any claim he may have had in the property. Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

17. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 24 CR 595-2.

19. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or

judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

20. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pretrial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph

does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

d. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

21. Defendant understands that he has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Agreement, defendant knowingly consents to prosecution of the charges against him in the Northern District of Illinois and waives any objection to the venue of this prosecution.

**Presentence Investigation Report/Post-Sentence Supervision**

22. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

23. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

25. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

27. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

28. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by

the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: April 16, 2026

*/s/ Christopher K. Veatch*
CHRISTOPHER K. VEATCH
For the United States Attorney

[signature]
ZEHAUN WEI
Defendant

[signature]
JENNIFER ARONOFF
Assistant U.S. Attorney

[signature]
ALEX KESSEL
Attorney for Defendant